No. 17-0847 — *The Bruce McDonald Holding Company, David B. McDonald Land Company, Oakley, LLC, S.E. McDonald, LLC, CB Morris, LLC, L.O.U., LLC, Glenn T. Yost, as Attorney in Fact for Ernest Phipps Credit Shelter Trust, and CDC Real Estate, LLC v. Addington, Inc., The Brink's Company, and Pittston Coal Company*

**FILED**

**April 22, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Jenkins, Justice, dissenting:

This case involves a coal lease, executed in 1978 and pertaining to high-quality, high-volatile metallurgical coal, that has never resulted in the production of any coal whatsoever for more than forty years. The majority opinion has affirmed an order of the Circuit Court of Logan County, Business Court Division, which granted summary judgment in favor of respondents (collectively referred to as "Addington"), who are lessees of coal owned by the Petitioners (collectively referred to as "McDonald Companies"), thereby foreclosing the McDonald Companies' attempts to have their 3,300 acres of coal lands mined. Because I believe there are material questions of fact in this case sufficient to overcome summary judgment, and because I further believe that, under the lease at issue, the McDonald Companies are entitled to have their coal actually and diligently mined, which is an issue that has not been previously decided and, thus, is not barred by collateral estoppel, I respectfully dissent.

The majority based its decision in this case upon two grounds. First, the majority relied on the doctrine of waiver and found that the McDonald Companies had waived their claim that Addington had a duty under the lease to diligently mine coal. In

1

addition, the majority concluded that the McDonald Companies' claim is barred by collateral estoppel. I disagree with both conclusions.

The McDonald Companies have presented sufficient evidence to show that they have not waived their claim that Addington had a duty under the lease to diligently mine coal. Therefore, summary judgment was not proper, and the lower court should have been reversed. As the majority itself acknowledges, "waiver is ordinarily a question of fact." *Bruce McDonald Holding Co. v. Addington, Inc.*, No. 17-0847, 2019 WL 1319859, at *8 n.21 (W. Va. Mar. 20, 2019) (quotations and citation omitted). Waiver becomes a question of law only when there is merely "one reasonable inference [that] can be drawn from the evidence[.]" *Id.* Such is not the case in this matter.

As outlined by the majority, the doctrine of wavier consists of three elements, all three of which must be present in order for the doctrine to be applied: "The essential elements of the doctrine of waiver are: (1) the existence of a right, advantage, or benefit at the time of the waiver; (2) actual or constructive knowledge of the existence of the right, advantage, or benefit; *and* (3) intentional relinquishment of such right, advantage, or benefit." Syl. pt. 4, *id.* (emphasis added). The use of the conjunction "and" in this holding necessitates the presence of all three elements of waiver. *See Bowden v. Monroe Cty. Comm'n*, 239 W. Va. 214, 221, 800 S.E.2d 252, 259 (2017) (explaining "[t]he three factors . . . are joined with the conjunctive 'and,' meaning they all must be present. . . ." (quotations and citation omitted) (footnote omitted)); *Ooten v. Faerber*, 181 W. Va. 592,

2

597, 383 S.E.2d 774, 779 (1989) (observing that "the use of 'and' . . . clearly makes [all listed] conditions necessary" and stating that "'[a]nd' is a conjunction connecting words or phrases, expressing the idea that the latter is to be added to or taken along with the first"). In this case, there was sufficient evidence to create a genuine issue of material fact and overcome a motion for summary judgment as to the required element of intentional relinquishment of a known right. *See* Syl. pt. 3, *Aetna Cas. & Surety Co. v. Fed. Ins. Co. of N.Y.*, 148 W. Va. 160, 133 S.E.2d 770 (1963) (holding that "[a] motion for summary judgment should be granted only when it is clear that there is *no* genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law" (emphasis added)).

To show that they did not intentionally relinquish their right to have their coal mined, the McDonald Companies presented evidence that they repeatedly objected to Addington's failure to commence mining and production of its extensive coal reserves. For example, the record contains repeated communications from the McDonald Companies to Addington in 2008 and 2009 objecting to the lack of mining and requesting assurances that mining operations would be promptly commenced. In response, Addington assured the McDonald Companies that it or its contractors would implement a plan for mining the coal. The record also reflects that, between 2012 and 2014, the McDonald Companies and Addington participated in a series of meetings during which the McDonald Companies again pursued their goal of getting Addington to fulfill its obligation under the lease to actually mine coal. The record additionally contains evidence of deposition testimony by

3

various witnesses adverse to the McDonald Companies who nevertheless agreed that the McDonald Companies continually voiced objections to the lack of mining. All of this evidence was sufficient to establish a genuine issue of material fact such that summary judgment was not proper.

Furthermore, under the plain language of the lease, Addington had a duty to diligently mine coal notwithstanding its payment of royalties. Even though the lease allowed for minimum production royalties, it also contained various provisions expressing the parties' intention to diligently mine the subject coal. For instance, the lease expressly states that

> it is *the mutual intent of all parties hereto* that the Lessee shall properly prospect and engineer such property, and *that the Lessee herein shall systematically mine such property by multi-level deep, strip and auger mining in such manner as to ensure that all the merchantable and mineable coal in all of the seams hereby leased* as provided in Article X of this Lease, *is mined and that all such coal so mined will be prepared, marketed, and sold by such means and methods as will ensure the highest available sales prices therefor*.

(Emphasis added). The lease further provides that the lessee "will diligently prosecute its operations on the premises hereby leased so that *all the merchantable and mineable coal herein provided* to be mined *shall be mined*[.]" (Emphasis added). Yet another provision of the lease required Addington to "conduct sufficient coal prospecting and preliminary engineering to enable Lessee to proficiently plan multi-level deep, strip and auger mining operations upon the demised premises *in such manner as to mine and remove all the merchantable and mineable coal hereby leased*." (Emphasis added). All of these

4

provisions clearly express the intent of the contracting parties that the coal be actually and diligently mined, and these provisions cannot be ignored.

> As with other contracts, the language of a lease agreement must be considered and construed as a whole, giving effect, if possible, to all parts of the instrument. Accordingly, specific words or clauses of an agreement are not to be treated as meaningless, or to be discarded, if any reasonable meaning can be given them consistent with the whole contract.

Syl. pt. 3, *Moore v. Johnson Serv. Co.*, 158 W. Va. 808, 219 S.E.2d 315 (1975). Because the lease in question contained both a minimum royalty provision *and* a covenant to diligently mine, both provisions should have been enforced. *See N. Star Co. v. Howard*, 341 S.W.2d 251, 254 (Ky. 1960) ("The lease contains not only a provision for the payment of minimum royalty but also a covenant requiring Star to diligently mine the Howards' coal. The parties to the lease obviously did not intend the minimum royalty provision as a limitation on the specific covenant requiring Star to mine diligently. Any other interpretation would render the requirement of diligence meaningless.").

Furthermore, contrary to the conclusion reached in the majority opinion, the McDonald Companies' claims are not barred by collateral estoppel. One of the required elements for collateral estopped is that "[t]he issue previously decided is identical to the one presented in the action in question." Syl. pt. 1, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995). It is undisputed that the McDonald Companies did not assert their diligent mining claim in the prior litigation between the parties. In fact, in its brief, Addington states that "the McDonald Companies brought this action in 2016 contending—

5

*for the first time . . .* —that Addington is obligated to mine more than the 250,000 tons a year required under article XIII. . . . The McDonald Companies call this their 'diligent mining' claim." (Emphasis added). Clearly, then, the McDonald Companies' diligent mining claim is not identical to an issue previously decided and, therefore, is not barred by collateral estoppel.

For the reasons explained above, I respectfully dissent.